Geeen, J.
delivered the opinion of the court.
In this case the plaintiff in error was found guilty of murder in the 1st degree, in the circuit court of Giles, and judgment of death was pronounced upon him, from which judgment he prosecutes his appeal in this court. It is contended, that the evidence did not warrant a conviction for murder in the first degree, and that the case is only one of .murder in the second degree.
By the third section of the act of 1829, c23, it is enacted, that “all murder which shall be perpetrated by means of poison, lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of, or attempt to perpetrate any arson, rape, robbery, burglary, or larceny, shall be deemed murder in the first degree, and all other kinds of murder shall be deemed murder in the second degree.” When the act of killing is not done in the commission or attempt to commit some felony, nor by poison, or lying in *552 wait, in order that it be murder in the first degree, the killing ’ . • , • i be done wilfully, that is, oí purpose with intent that the act by which the life of a party is taken should have that effect, deliberately, that is, with cool purpose; maliciously, that is, with malice aforethought, and with premeditation, that is, a design must be formed to kill, before the act, by which the death is produced, is performed. In other words, “proof must be adduced to satisfy the mind that the death of the party slain was the ultimate result, which the concurring will, deliberation, and premeditation of the paity hccused, sought. 1 Leigh’s Rep. 611. With this understanding' of the act of assembly, wé proceed to notice the proof in the cause.
Benjamin Tilman, the first witness introduced, says, that as himself and Loving were returning home along the pub-lie road, which was in eighty or one hundred yards of Dale’s house, on the evening of 24th June, 1836, being too dark to see to shoot any distance, they heard a gun fire, and that witness knew it to be the report of Dale’s musket; that they suspected mischief had been done and rode towards Dale’s house; that upon approaching within forty yards of the house" they heard loud talking, and knew it to be Dale’s voice, that they heard Dale say, “I have shot you, I told you I would shoot you, I intended to do it, and I have done it, and I would do it again. You said you loved me too well, and that I was too good a friend of yours to shoot you.” Dale was standing in his door as witnesses rode up, but as they approached he withdrew into the house and closed the door. When they rode up to the yard fence they saw a man lying hear the fence, and on examining him they found that it was James McCafferty, and that he was dead; but was then limber and bleeding} from a wound in his left side, which was made by a shot from a gun. McCafferty was lying outside of the fence, and the fence was ten steps from the house. AH the shot went in at the same hole, and the gun must have been very near to McCafferty when it fired, or all the shot would not have gone in at one hole. Witness and Loving procured assistance and apprehended Dale. He was asked why he had killed McCafferty, he said, that when he came *553 home he found McCafferty there, that he wanted to stay all night, and that he shot him. When asked by another son what this meant, he said McCafierty was throwing sticks at him. They looked for sticks but none were found. Loving corroborates Tilman’s evidence, except that he does not remember the words Dale used as they approached his house, but that lie heard him say, that he told him to go away, and if he did not go away he would kill him. To another witness Dale said, that when he came home he found the deceased at his house, and that he wanted to stay all night, and that he would not let him. That McCafferty was started off by defendant, and was gone a short lime and came back and said he must slay. Defendant told him he could not, deceased then said lie would stay, whereupon defendant took down his gun and shot him, saying, that he was not going to have his house imposed upon. To another witness, lie said, that McCafferty had insulted his wife. On the day the killing took place, Dale and McCafferty were both at Camp-bellsville, and Dale had been drinking very-freely. It was not proved that Dale was acquainted with McCafferty. Both Dale and McCafierty were proved to have been peaceable men.
Let us now apply these facts to the principles laid down in the outset, and ask ourselves, “VVau the death of McCaf-ferty the ultimate resu’t, which the concurring will, deliberation and premeditation of Dale sought?” Wo are constrained to answer in the affirmative. Ilis statement that McCaf-ferty threw sticks at him, is entitled to no credit. Indeed he seemed conscious of this himself, for when they looked where he said the sticks were thrown and found none, one of the witnesses told him he did not believe the statement, to which he ¡riada no reply. If the sticks had been thrown, they must have been tlieie when the witnesses sought them, for the occurrence had been too recent for them to have been removed. The statement that. McCafferty had insulted his wife is alike unworthy of credit. This statement was made to only one witness, and that not til! after his tale about the slicks had been discredited. How then does the case stand? Taking his account of the affair after lie was appre *554 hended, in connexion with the expressions which Tilman Lovjng heard him utter, as they rode up, and we have simply the case of an urgent application of McCafferty to stay a]j njght, repeated by him after the refusal on the part of Dale, and a threat to kill him, if he did not go away, and upon his pressing his application he is shot through the body. It will not be doubted, but that Dale intended to kill Mc-Cafferty when he fired the gun; he was very near to his object, so near that all the shot made but one hole: he must have expected therefore that the charge would take effect. Was not the act deliberately done? It was upon no sudden pmotion, hastily and without reflection; before he fired, he warned the deceased and threatened to shoot him. McCaf-fetty told him he was too good a friend for that, and disregarding the warning pressed his application to stay all night. The shooting, after all this, must have been the result of a deliberate purpose. It was a purpose previously conceived in the mind and determined upon by the defendant. When he first made the threat, he had conceived the thought, and determined upon what he would do, if McCafferty persevered in wishing to stay, and when that disposition was further manifested by McCafferty, Dale fired upon him, intending deliberately and with premeditation to kill him. We think therefore the jury were warranted in finding a verdict of murder in the first degree.
No objection is taken to the charge of the court. A conversation between the circuit judge and the counsel for the defendant, while the cause was in progress before the jury, is certified in this bill of exceptions, and it is supposed that the suggestions of the judge in that conversation differ from the opinion of this court in McGowan vs. The State, 9 Yerger’s Reports, 195. It is questionable whether that conversation formed any pan of the proceedings of the case, and consequently whether it was not improperly certified in the bill of exceptions. The judge in it does not purport to decide the question, or to prevent argument. If he had done either of these, it might have been proper to certify the facts that occurred. But there is no error in the remarks of the judge upon the legal question, if we regard what was said in the *555 light of a charge to the jury. In M’Gowan’s case the circuit judge had said, “The court was to be the judge of the Jaw, and the jury exclusively judges of matters of fact, and it was the duty of the jury to receive the law as laid down and expounded by the court, and that the jury was not the exclusive judges of the law.”
When the cause came before this court, after remarking upon some inaccuracies in the sentence above quoted, the court, concurring with the case in 10 Pickering’s Rep. 496; lay down the law to be that as the jury have a right to find a general verdict of guilty or not guilty, and consequently to decide the questions of law and fact, involved in the general question, and if they acquit a party no tribunal can review or set aside their verdict, it must follow that they are judges of the law as well as the fact; but that it is the duty of the court to expound the law to them, by which they may be safely' guided, and to disregard it, (which they have the power to do,) is to assume a high responsibility, and should never be done by a jury unless they know they are right. In the conclusion of the remarks of the court upon that head, the court say, in reference to the charge of the circuit court', that although there were some inaccuracies of expression, yet they were not such as to constitute ground of error:
In the case before the court, the judge says, “The jury are the judges of the law as it applies to the facts; they are the exclusive judges of the facts, but in making up their verdict they are to consider the lawin connexion with the facts, but the court is the proper source from which they are to get the law, in other words, they are the judges of the law as well as the facts, under the direction of the court.”
This statement we consider substantially correct, and in accordance with the opinion of this court in the case of M'Gowan vs. The State, before referred to, and which opinion, after mature consideration, we re-affirm. There is therefore no error in the record in this case, and the judgment must be affirmed.
Judgment affirmed.